### The Town of Clinton vs. Mortimer Buell.

Hartford Dist., May T., 1887.   Park, C. J., Carpenter, Pardee, Loomis and Beardsley, Js.

The statute (Gen. Statutes, p. 214, secs. 2, 3, 4,) provides for the designation by a committee of any town, to any individual applying, of ground within the navigable waters of the town for the cultivation of oysters, with a provision that no natural oyster bed should be so designated; and a later section (sec. 11) passed in 1870, provides that the Superior Court, on application of the town or of any person interested, may order the removal of any stakes enclosing any ground in violation of the provisions of the statute.   An act passed in 1878 (Session Laws 1878, ch. 24), provides that no natural *clam bed* shall be thus designated and enclosed, but provides no remedy for a violation of the act. Held that the remedy provided for a violation of the former act was not impliedly embraced in and applicable to the latter act.

The act of 1878 was enacted solely for the protection of the public right of fishery, and, in the absence of any legislative permission to the town to sue, the state is the only party to enforce the remedy, if any exists, for its violation.

[Argued May 27th—decided September 9th, 1887.]

Application to the Superior Court in Middlesex County, for an order for the removal of stakes enclosing ground claimed to be a natural oyster, clam and mussel bed, under the provisions of General Statutes, p. 215, sec. 11.   The facts were found by a committee, the defendant filed a remonstrance against the acceptance of the report, and the

court made a finding of facts on the remonstrance and reserved the case for the advice of this court. The case is sufficiently stated in the opinion.

*W. F. Willcox* and *W. C. Robinson*, for the plaintiff.

*L. Harrison* and *J. W. Alling*, for the defendant.

BEARDSLEY, J. This is a proceeding under a statute passed in 1870, to throw open to the public ground claimed to be a natural oyster bed, which has been designated to the defendant, and enclosed for planting oysters. The material part of the statute is as follows:—

" When any natural oyster bed, or any part thereof, is designated, enclosed or staked out, contrary to the provisions of this chapter, the Superior Court as a court of equity, in the county in which said oyster bed is situated, upon the petition of any individual aggrieved, or of the town in which said oyster bed is situated, against the person claiming the same, and the chairman of the oyster committee appointed by the town, where such petition is brought by an individual, shall appoint a committee, who, having been sworn and having given notice to the parties, shall hear said petition, and report the facts thereon to such court, and if it shall appear that such oyster bed has been improperly staked out, the court may order said committee to remove the stakes inclosing the same ; costs to be paid at the discretion of the court." Gen. Statutes, p. 215, sec. 11.

The case was referred to Robert G. Pike, Esq., as a committee, who reported the facts to the court. The defendant remonstrated against the acceptance of the report, claiming that the committee had erred in admitting certain evidence, and that Mr. Pike was disqualified to act as committee by reason of interest and bias, and that he had improperly conversed regarding the case while it was pending. The view which we have taken of the case renders it unnecessary to decide these questions.

It is proper however to say that upon the finding of the

court no reason appears to question the fitness of the appointment of Mr. Pike as committee, or the regularity and propriety of his conduct while so acting.

The committee have not found in terms that the ground in question, when it was designated and staked out to the defendant, was not a natural oyster bed, but such is the necessary conclusion from the facts found.

It is found that it was formerly a natural oyster bed, but that owing to a change of the current in Clinton harbor, produced by a new channel which has been formed by the action of the water, deposits of mud and other materials were made upon it, so that for the last twenty-five years there have not been more than five or six years, at irregular intervals, when oysters have been taken from it in paying quantities. It does not appear from the finding that for many years there has been any accumulation of oysters upon it. The finding that since the ground was staked out to the defendant, the new channel has been closed by a breakwater which has had the effect of removing the muddy deposit from the old channel, is obviously immaterial.

The committee also finds that the ground in question, when it was set out to the defendant, was a natural clam bed. In 1878 the legislature enacted that "no committee or selectmen of any town shall designate, and no person shall mark, stake out, or enclose for the cultivation of oysters, clams or mussels, any natural clam bed." Acts of 1878, ch. 24.

The plaintiff claims, inasmuch as no specific penalty or mode of redress is provided for a violation of this statute, that, upon the principle that statutes made in relation to the same subject matter are to be construed together, the provisions of the statute of 1870 are impliedly applicable for the protection of natural clam beds. There would be force in this claim if clams and oysters were substantially identical, but they are not, each being a distinct species of shell fish, and it is apparent that the legislature has discriminated between them in the provision which it has made for their protection. The statute regulating the bedding of clams

Town of Clinton *v.* Buell.

was made in 1874, by amending certain sections of the oyster law then in force, so that they should include clams and mussels. The sections thus amended provided merely for the designation of ground for planting oysters, by a committee to be appointed by the towns, but imposed no penalities, except for staking out natural oyster beds. Acts of 1874, ch. 41.

The two sections in the oyster law immediately following those so amended, made it highly penal to carry away planted oysters. In 1878 the legislature, in "an act relating to oyster grounds and fisheries," in the first and second sections made provisions in the interest of persons to whom lots had been designated for planting clams, oysters and mussels, and in the fifth section imposed a severe penalty upon persons who should unlawfully carry away planted oysters. Acts of 1878, ch. 24.

A person planting clams in conformity with the statute is declared to be the owner of them, and has of course all the rights incident to such ownership, but we know of no specific statutory penalty for the unlawful removal of them. The legislature might have thought that no penalty in addition to the forfeiture to the public of the oysters, which would result from a violation of the statute of 1878, was necessary to effectuate its provisions. The committee find that placing oysters upon the clams would not injure the clams, and the clam-digger might be quite willing to submit to the inconvenience of removing the oysters, in view of the fact that he could appropriate them to his own use.

The claim that this proceeding can be maintained, and relief afforded, without reference to the statute of 1870, is not well founded. The statute of 1878 was enacted solely for the protection of the public right of fishery, and in the absence of any legislative permission to the town to sue, the state is the only party to enforce the remedy, if any exists, for its violation. *Rowe* v. *Smith,* 48 Conn., 447, 448, 449.

The Superior Court is advised to dismiss the complaint.

In this opinion the other judges concurred.